UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
                                                                            :
                                                                            :
AMERICAN SOCIETY FOR THE                                                    :
PREVENTION OF CRUELTY TO ANIMALS,                                          :
                                                                            :
                    Plaintiff,                                              :
                                                                            :
                                                                            :
            v.                                                              :   Civil Action No. 1:19-cv-3112-NRB
                                                                            :
THE ANIMAL AND PLANT HEALTH                                                :
INSPECTION SERVICE, and                                                    :
THE UNITED STATES DEPARTMENT                                               :
OF AGRICULTURE,                                                            :
                                                                            :
                    Defendants.                                            :
                                                                            :
                                                                            :
                                                                            :
                                                                            :
                                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.   THE AGENCIES' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED. ................................................................. 1

II.  THE ASPCA IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS POLICY OR PRACTICE CLAIM. ................................................. 5

III. DECLARATORY AND INJUNCTIVE RELIEF IS APPROPRIATE. ........................... 9

IV.  THE AGENCIES UNLAWFULLY WITHHELD CERTAIN INFORMATION UNDER EXEMPTION 4 ............................................................. 11

V.   THE AGENCIES UNLAWFULLY WITHHELD CERTAIN INFORMATION UNDER EXEMPTION 5 ............................................................. 14

    A.   Defendants' submissions are insufficient. ............................................. 14

    B.   Defendants fail to show reasonably foreseeable harm. ........................ 14

    C.   Defendants fail to demonstrate that the challenged documents fall within Exemption 5. ................................................................. 15

    D.   Defendants must disclose all reasonably segregable information. .................... 18

    E.   In camera review of the challenged documents is appropriate. ........................ 19

CONCLUSION ................................................................................. 20

# I.    THE AGENCIES' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED.

The Amended Complaint, Dkt. 22 ("AC"), alleges that Defendants repeatedly violate FOIA with their practices of failing to issue timely determinations and promptly release records, and with their policy of unlawful redaction.  AC ¶¶ 378-81.  Defendants' Reply again mischaracterizes the AC as centered on a failure to issue timely determinations, inexplicably denying that the AC even alleges a policy or practice of unlawfully withholding non-exempt information, and entirely failing to respond to the AC's allegations that Defendants' ongoing failure or refusal to ***promptly*** release non-exempt records shows a practice resulting in a persistent failure to adhere to FOIA.  5 U.S.C. § 552(a)(3)(A) (agencies "shall make [non-exempt] records promptly available"); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F. 3d 770, 780 (D.C. Cir. 2018).  Below, the ASPCA responds to each of the flawed arguments advanced in Defendants' Reply.

Initially, Defendants complain that the "ASPCA proceeds as if the D.C. Circuit's standard, recently articulated in [*Judicial Watch*], is the governing standard."  Dkt. 54 ("Reply Br.") at 3.  However, Defendants' opening brief consistently adopts the D.C. Circuit's standard to make their argument for dismissal.  *E.g.*, Dkt. 43 ("Defs.' Br.") at 38-41, 43, 49.  And, Defendants' Reply likewise relies exclusively on the D.C. Circuit's standard.  *E.g.*, Reply Br. at 4-5, 7.  The ASPCA's argument against dismissal simply meets Defendants on their own chosen terms.

Additionally, Defendants previously cited three cases where this Court has addressed FOIA policy or practice claims in the last decade.  *See* Defs.' Br. at 38 (citing cases).  One of those cases even addressed the policy and practice claim at summary judgment.  *N.Y. Times Co. v. F.B.I.*, 882 F. Supp. 2d 426, 431 (S.D.N.Y. 2011).  In fact, the government's own DOJ Guide to the Freedom of Information Act (Litigation Considerations) states: "[D]istrict Courts within the First, ***Second***, Seventh, and Tenth Circuits, have implicitly recognized the validity of pattern-or-practice claims

under FOIA by hearing and adjudicating such claims."[1]   And, Defendants cite no authority suggesting that policy or practice claims are not cognizable in this Circuit.

Next, Defendants assert that the allegations in the AC are confined to "assertions of an impermissible policy or practice of failing to respond to ASPCA's FOIA complaints [sic] within 20 business days," and contend that the ASPCA is now attempting to "salvage" its claim by "recasting its allegations" into a "late-articulated theory" alleging "a refusal by Defendants to release information based on exemptions that do not apply and were not applied before February 2017." Reply Br. at 3. However, the ASPCA quoted precisely what the AC alleges. "Count 27: FOIA Violation—Policy and Practice" consists of paragraphs 378-81 in the AC. In relevant part, paragraph 380 reads: "After months, or in some cases, years of delay, Defendants have released only substantially redacted records, ***citing FOIA Exemptions that do not apply and which Defendants themselves did not apply to similar records until on or about February 2017***." (emphasis added). Defendants' blind insistence that this articulation of the ASPCA's claim "is not found in its own allegations" is inexplicable. Reply Br. at 3 n.3.

Likewise, Defendants' assertion that the AC "fails to allege any history or pattern of withholding records" in violation of FOIA or fails to point to "prior unlawful holdings of non-exempt records" is baseless. Reply Br. at 4. Not only does paragraph 380 of the AC reference the Agencies' history of unlawful withholdings beginning in February 2017, Counts 24 and 25 allege unlawful withholdings by the Agencies in 2018. AC ¶¶ 352-67, 380. Furthermore, paragraph 45 of the AC alleges that the Agencies repopulated the Database with "records previously available in unredacted form [that] have now been redacted ***in violation of the law***," and that these redactions were made by the Agencies to "conceal the status of license holder's compliance with the AWA."

---

[1] DOJ Guide to the Freedom of Information Act (Litigation Considerations) at 79 (emphasis added), https://www.justice.gov/oip/page/file/1205066/download#page=76.

AC ¶ 45 (emphasis added). Thus, the ASPCA alleged Defendants relied on a theory that was subsequently rejected by the court in *Humane Soc'y of the U.S. ("HSUS") v. Animal Planet Health Inspection Serv. ("APHIS")*, 386 F. Supp. 3d 34 (D.D.C. 2019).

Defendants also fault the ASPCA for not addressing Defendants' citation to *Citizens for Responsibility & Ethics in Washington ("C.R.E.W.") v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) and its "analysis of the 20-day response timeline being an administrative exhaustion requirement." Reply Br. at 4 n.4. But *C.R.E.W.* is inapposite, as it did not involve a policy or practice claim. There, the agency argued that its communication to a requester that it "will produce non-exempt responsive documents and claim exemptions in the future" constituted a "determination" which triggered the requestor's obligation to administratively appeal prior to filing suit. *C.R.E.W.*, 711 F.3d at 182-83. The D.C. Circuit rejected the agency's argument that the plaintiff failed to exhaust its administrative remedies, finding that such a bare communication did not amount to a final determination. *Id.* at 183. In that context, the appellate court stated that the "penalty" for failing to issue a timely determination was that the agency could not rely on the administrative exhaustion requirement to keep the case from getting to court.[2] As *Judicial Watch* makes clear, an interpretation of FOIA that views the right to sue as the sole recourse for a failure to adhere to FOIA's statutory deadlines is "untenable" because it "renders FOIA's mandate of 'prompt' response superfluous, *i.e.*, a dead letter." *Judicial Watch*, 895 F. 3d at 780. Thus, Defendants are making the very argument that *Judicial Watch* rejected as untenable—that failures to adhere to FOIA's pre-litigation requirements "do not establish a FOIA violation and consequently cannot be the basis for a policy or practice claim." *Id.* at 779.

---

[2] Defendants' parenthetical, Reply Br. at 3, mischaracterizes the opinion, describing the ruling as stating that the inability to keep the case from going to court was the ***only*** "penalty." But the word "only" does not appear in the sentence Defendants quoted from *C.R.E.W.*

Next, Defendants contend that the ASPCA cannot support its policy or practice claim based on allegations of unlawful redactions (1) in the AC "for which they do not yet have any rulings" or (2) in the ASPCA's prior lawsuit against the Agencies "because the ASPCA did not obtain any rulings in that case regarding withholdings."  Reply Br. at 4-5.  These conclusory assertions are simply not relevant to the ASPCA's burden under Rule 12(c).[3]  Even so, the reason there was no court ruling in the prior case, and rulings as to the majority of redactions under Exemptions 6 and 7(C) have become unnecessary here, is that the Agencies reprocessed the records and released the previously-withheld information ***after the lawsuits were filed***, thus conceding they ***unlawfully*** applied those exemptions.[4]  While voluntary release of previously withheld information may eliminate the need for a ruling on the legality of individual withholdings, it does not moot a policy or practice claim.  *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 491-92 (D.C. Cir. 1988).

Defendants also assert that their "decision in February 2017 to remove certain records from their publicly-available online databases is not a violation of FOIA."  Reply Br. at 5.  While the decision was contrary to Congressional intent, as shown by subsequent legislative action, the ASPCA does not contend that ***blocking access to the online database*** was itself a violation of FOIA.  Instead, it was the Agencies' subsequent reposting of ***redacted*** versions of records that had been previously released unredacted that violated FOIA.  *Supra* at 2-3; *see Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279-80 (D.C. Cir. 1992).  Defendants entirely fail to address or dispute this point.  While the Agencies state their aim was "to remove certain personal information posted on its website involving the . . . AWA," Reply Br. at 6, they ignore that the AC alleges they

---

[3] These assertions are also at odds with this Court's observation that whether the Agencies prevail on their asserted exemptions is relevant to Your Honor's ruling on the policy or practice claim.  Dkt. 31 at 7.  Logically, the ASPCA's claim wouldn't be subject to dismissal based on the mere absence of a ruling.

[4] Following the release of previously withheld information in the first case, the Court entered judgment in favor of the ASPCA for attorneys' fees in the amount of $25,000.  *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal Health Inspection Serv.*, Case No. 1:18-cv-4559-GBD-DCF (S.D.N.Y. 2020), Dkt. 85.

removed this information with the intent of "conceal[ing] the status of a license holder's compliance with the AWA," the same rationale the court rejected in the *HSUS v. APHIS* litigation. *See* AC ¶ 45; Dkt. 50 ("Pl.'s Br.") at 15.

Finally, Defendants' argument that the passage of the *Further Consolidated Appropriations Act of 2020*, Pub. L. 116-94, 133 Stat. 2534 (2019) ("Appropriations Act") "moots any allegation of ongoing alleged unlawful behavior" also fails.  Reply Br. at 6.  Restoration of the database does not moot the AC's policy or practice allegations, including Defendants' practices of failing to issue determinations within 20 business days, failing to release records promptly or at all, or continued withholding of non-exempt information.  Indeed, the records the ASPCA has most consistently requested from the Agencies since at least 2016—photographs taken during licensee inspections (*see, e.g.*, AC ¶¶ 50-55, 57, 60, 65, 67, 70-72, 77-79, 82, 84) —are not even available on the Database.  *See* Appropriations Act.

For the reasons stated above and those in the ASPCA's cross-motion, Defendants have failed to meet their burden and their motion for judgment on the pleadings should be denied.

## II.    THE ASPCA IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS POLICY OR PRACTICE CLAIM.

Defendants' Reply utterly fails to show that they are entitled to summary judgment on the ASPCA's policy or practice claim.  Instead, the undisputed facts show that the ASPCA is entitled to judgment as a matter of law, and the declaratory and injunctive relief requested in the AC should issue.

It is undisputed that, ***95% of the time***, Defendants failed to issue determinations within FOIA's mandated timeline.  Dkt. 56 ¶ 32.  Likewise, it is undisputed that Defendants do not "promptly" release non-exempt records as FOIA requires—the average response time to the ASPCA's requests has been ***224 days***, longer than the average response time for similar requests

(200 days), and far longer than APHIS's average response time for simple requests in general during the relevant time period. *See* Pl.'s Br. at 18-19; Wood P&P Decl., ¶¶ 32-33; *see also* Ex.[5] 30 at 24 (2017—123 days), Ex. 9 at 30 (2018—180 days).   Defendants now admit that the commencement of this litigation resulted in a "re-prioritizing" of the ASPCA's requests.   Reply Br. at 9.  Thus, without the pressure of this lawsuit, response times to the ASPCA's requests would have been even longer.   These undisputed facts establish that the Agencies' "usual way of doing something," their "repeated or customary action" (in other words, practice) is (1) to fail to adhere to FOIA, (2) to take *longer* to respond to the ASPCA's requests than others, and (3) to use litigation as an organizing tool for responding to FOIA requests—a practice expressly rejected by *Judicial Watch*. *Judicial Watch*, 895 F.3d at 781 ("An agency's use of a lawsuit as an organizing tool for prioritizing responses renders FOIA's requirements 'insignificant, if not wholly superfluous.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

Defendants' response is to deny that any of this matters.  They assert they have no "*formal policy* of refusing to respond to FOIA requests within 20 business days."  Reply Br. at 7 (emphasis added).  But that is not the standard.  "[I]nformal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *Judicial Watch*, 895 F.3d at 777-78; *see also Payne*, 837 F.2d at 491 ("The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant . . . .").  By definition, the undisputed facts establish that Defendants have adopted, maintained, or endorsed a "practice" resulting in repeated violations of FOIA.  The absence of a "formal policy" is irrelevant.  *See id*.

---

[5] "Ex." refers to exhibits to the Declaration of Robert G. Hensley, Jr. in Support of Plaintiff's Cross-Motion for Summary Judgment, Dkt. 51, unless otherwise specified.

Furthermore, Defendants' continued refrain that they "have encountered delays in responding to FOIA requests in recent years" again ignores the fact that the increased requests and litigation they have faced are problems of their own making.  Reply Br. at 7.  ***This*** is what distinguishes APHIS's increasing backlog from the routine caseload increases and backlogs of agencies throughout the government.  APHIS's backlog of requests is the direct and foreseeable result of Defendants' intentional, wrongful and unlawful acts—blacking out the Database, implementing a ***formal policy*** of concealment, and taking no steps to prepare for the increase in requests their own intentional acts made inevitable.  *See Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army*, 58 F. Supp. 3d 1050, 1056 (C.D. Cal. 2014).

The undisputed facts show that Defendants adopted a policy of withholding non-exempt records beginning in 2017 when, after blocking public online access to APHIS's most frequently requested records, they repopulated the Database with redacted versions of records that had been previously released ***unredacted***.  Woods P&P Decl. ¶ 13.  This was a violation of FOIA.  *See Davis*, 968 F.2d at 1279-80.  It was not an accident or a mistake; the undisputed facts show it was just the first step in Defendants' calculated effort to conceal the identity of licensees who had violated the AWA.  *See HSUS*, 386 F. Supp. 3d at 43 (APHIS argued against "linking the licensees' names . . . with descriptions of noncompliant conduct").  The Agencies' brief in the *HSUS v. APHIS* litigation, supported by Woods's sworn declaration, explained in detail how the Agencies ensured no linkage could be made by the public.[6]  But Defendants' withholding of this information

---

[6] Defs. Mot. for Summ. J., No. 18-0646 (TNM), 2018 WL 8493341, at *6 (D.D.C. Sept. 7, 2018) ("The publicly-available inspection reports . . .  are anonymous because they do not identify the licensees to whom they pertain. . . . If APHIS were to release to Plaintiff information such as an inspection date,  . . . Plaintiff would learn the identities of the licensees that are currently redacted in the online versions of the reports, effectively creating an unredacted version of the record." (citing Woods Decl. ¶ 16 & Ex. 2)).

was unlawful. *HSUS*, 386 F. Supp. 3d at 43-46.[7] The history of the Agencies' efforts to anonymize these records shows that the Agencies adopted a policy of concealment that was unlawful.

This unlawful policy was ongoing when the ASPCA filed its Complaint on April 8, 2019, and the AC on May 31, 2019. The district court's opinion in the *HSUS v. APHIS* litigation issued four days later on June 3, 2019. Thereafter, Defendants twice reprocessed the records at issue here, and admit that "APHIS has now released the vast majority of records sought by the ASPCA, with minimal redactions," thus conceding that these redactions were unlawful. Defs.' Br. at 1. The voluntary release of previously withheld information will not moot a policy and practice claim. *See Payne*, 837 F.2d at 491-92. The record evidence establishing the existence of a policy or practice of both unlawful delay and withholding is thus not simply undisputed, it is overwhelming.

Moreover, Defendants imposed this unlawful policy in a discriminatory manner. While withholding dates of inspection from animal welfare organizations and the public, Defendants released the same type of information to a licensee in one business day without a FOIA request. Ex. 13. In their Reply, the Agencies misleadingly describe this email as showing "on its face" that upon a broker's request for inspection dates for breeders, "the APHIS employee informed the broker that '[t]he proper channel would be . . . a FOIA request.'" Reply Br. at 11. Defendants ignore that this statement was made *after* the official had already disclosed inspection dates and with the suggestion that the licensee approach APHIS leadership to "find a way to make it work."[8] Ex. 13. The entire context suggests that similar releases of information to connected licensees had occurred before and could resume with the approval of APHIS leadership.[9]

---

[7] The district court did not rule on the question of whether APHIS had a "policy" of concealment.

[8] Notably, this official explained that releasing dates of inspection could be problematic for "the same reasons that people aren't able to look up breeders by name on the online search engine." Ex. 13. This further demonstrates that the Agencies' policy of concealment was firmly established and understood within APHIS.

[9] While the Agencies argue that this "hinges entirely on one email," the ASPCA received this email fortuitously from a FOIA request that was not targeted at this issue. It is entirely plausible more like it exist. Regardless, the undisputed

The Agencies wrongfully dispute the part of the ASPCA's Statement of Material Facts dealing with this email, stating: "[D]isputed that the cited evidence supports the assertions in paragraph 41." Dkt. 56 ¶ 41. The Agencies' denial is frivolous. Even a cursory review of the email string demonstrates that the ASPCA's statement is amply supported by the cited evidence. In response to the licensee's inquiry, an APHIS official replied "Hi Chris! See below," and provided the requested information *the next business day*. Ex. 13.

Additionally, Defendants' disputation is insufficient under Local Rule 56.1 because they do not explain their dispute or provide contrary evidence. *E.g.*, *SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 376 F. Supp. 3d 369, 376 n.7 (S.D.N.Y. 2019) (deeming facts admitted where defendants disputed facts stating only that the citation did not support them but did not explain why); *Covelli v. Nat'l Fuel Gas Distribution Corp.*, 2001 U.S. Dist. LEXIS 23932, at *5 (W.D.N.Y. 2001) ("[m]erely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial" is insufficient).

## III.     DECLARATORY AND INJUNCTIVE RELIEF IS APPROPRIATE.

For the reasons stated above and those in the ASPCA's Brief, this Court should enter summary judgment in the ASPCA's favor on AC Count 27, and declare that Defendants have adopted, endorsed, or implemented a policy or practice that constitutes an ongoing failure to abide by FOIA's requirements. *See* Pl.'s Br. at 16-23. Such declaratory relief is appropriate where, as here, a "plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy." *City of Hous. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994). As discussed in the ASPCA's Brief, Defendants' practice of unlawful delay continues unabated, and they have failed

---

record evidence, including this email, is sufficient to show that the Agencies' motion for summary judgment must be denied, and that the ASPCA is entitled to judgment as a matter of law.

"to confirm how [they] intend[] in the future to conform to FOIA's mandate to make requested non-exempt records 'promptly available.'" *Judicial Watch*, 895 F.3d at 784.

Furthermore, Defendants have failed to provide meaningful assurances that they will not resume withholding non-exempt records once this litigation ends. Instead, they simply point to the passage of the Appropriations Act, requiring posting of inspection reports and enforcement records without redactions. Reply Br. at 10-11. However, photographs taken during licensee inspections—records the ASPCA has requested monthly for years—are not required to be posted on the Database under the Appropriations Act. Woods SJ Decl. ¶ 18. Instead of confirming they will release inspection photographs and other inspection records without redactions going forward, Defendants attempt to shift the burden of persuasion to the ASPCA. *Id.* at 10-11; *contra Judicial Watch*, 895 F.3d at 784 (stating the agency must "confirm how it intends in the future to conform to FOIA's mandate"). Given the totality of the evidence concerning their unlawful policy of concealment, including its discriminatory application against animal welfare organizations and the public, declaratory relief is both appropriate and required.

Defendants also have no plan that will allow them "to conform to FOIA's mandate to make requested non-exempt records 'promptly available.'" *Judicial Watch*, 895 F.3d at 784. Their Reply fails even to acknowledge that (1) Defendants abandoned their backlog reduction plan in 2019, (2) after doing so, both APHIS's backlog and the agency-wide backlog *increased*, and (3) despite the worsening backlogs, Defendants kept the same backlog reduction plan that failed so spectacularly in 2019.[10]  *See* Pl.'s Br. at 28-30; Dkt. 52 ¶¶ 21-24. Regardless of whether Defendants' chosen course is the result of incompetence or willful neglect, injunctive relief is

---

[10] The trajectory of the Agencies' rising backlog is the opposite of the government's as a whole, which saw a 7.9% *reduction* in its overall FOIA backlog in FY2019. Dep't of Justice, Summary of Fiscal Year 2019 Annual FOIA Reports Published (June 1, 2020), https://www.justice.gov/oip/blog/summary-fiscal-year-2019-annual-foia-reports-published.

appropriate and necessary.  Specifically, the ASPCA requests that the Court require Defendants to return to the backlog reduction plan they adopted in 2018 and the measures outlined in USDA's Chief FOIA Officer Reports in 2010[11] – measures that resulted in a reduction of USDA's overall average FOIA response time to 15.52 working days[12] and APHIS's median and average response times for simple requests to 22 days and 46 days, respectively.[13]  These measures are not only proven, they were created and successfully implemented by Defendants themselves.  Requiring Defendants to return to their own previous plans is concrete and effective relief that this Court can order without concern over whether the Agencies are capable of implementing it.

## IV.    THE AGENCIES UNLAWFULLY WITHHELD CERTAIN INFORMATION UNDER EXEMPTION 4.

Defendants rely on one conclusory statement from Woods's Declaration to oppose the ASPCA's argument that Block 10 and fee information from licensee applications have been made publicly available.  "Here, after receiving input from the licensees at issue, Defendants determined that the financial information at issue 'is not ordinarily or actually released to the public.'"  Reply Br. at 13 (quoting Woods P&P Decl. ¶¶ 175-76).  But as Defendants themselves pointed out in *Jurewicz*, "annual APHIS inspection reports 'show the animal inventory at the time of inspection,' so competitors already have some sense of the size and growth of an operation."  *Jurewicz v. USDA*, 891 F. Supp. 2d 147, 154 (D.D.C. 2012) (citing A.R. 5534).  Moreover, the *Jurewicz*

---

[11] Ex. 2. These measures included: "The APHIS FOIA Office has taken steps to increase communication with the program offices.  Late reports are generated and are forwarded to the program offices.  These reports reflect outstanding search requests for records.  In addition, they also keep the lines of communication open and inform the appropriate individuals of the need to perform a search for records that may be responsive to a FOIA request."  *Id.* at 12.  "The Program Offices provided numerous detailees to assist our office in reducing our backlog cases.  Strike teams were implemented that focused on the programs with a high volume of backlogged requests.  We have also created an appeal, privacy and FOIA team to address the current backlog issue.  In addition, a Project Manager will be brought on board to oversee these efforts."  *Id.*

[12] 2014 USDA Chief FOIA Officer Report at 22,
https://www.dm.usda.gov/foia/docs/Final%20USDA%202014%20CHIEF%20FOIA%20OFFICER%20REPORT.docx.

[13] 2013 USDA Annual FOIA Report at 32,
https://www.dm.usda.gov/foia/docs/USDA%20FY13%20FOIA%20Annual%20Report.docx.

decision relied on Woods's representation that similar information is publicly available and quoted Woods's statement that APHIS "***routinely***" released fee information to the public. *Id.* at 154-55 (citing A.R.5540) ("APHIS has routinely released the amount of fees paid in response to FOIA requests.").

Defendants do not dispute or even address Woods's contradictory statements from 2012 or explain how the amount of a licensing fee paid to a federal agency could ever be considered a *private* matter. Instead, Defendants argue, without citation, that "whether or not 'similar information' was or is publicly available, thus allowing competitors to estimate some amounts and values, does not mandate that the information withheld here must be disclosed." Reply Br. at 13. But, whether the information is publicly available is the key factual matter here, as it speaks directly to whether the information at issue is actually kept private. *Id.*[14] At the very least, this factual dispute precludes summary judgment for Defendants.

Defendants also assert that the doctrine of judicial estoppel is inapplicable here because the "posture and outcome of the previous case—*Jurewicz* []—cannot be squared with the current legal standard for Exemption 4." Reply Br. at 12. Defendants' response misses the mark. Judicial estoppel does not apply to conflicting legal standards.[15] Rather, judicial estoppel applies to conflicting factual statements made to a court. *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695 (2d Cir. 2011) ("A potential consequence of a conflict between two factual statements made by the

---

[14] In a footnote, Defendants also argue that *Jurewicz* is not analogous because it was a "reverse FOIA" action and subject to the legal standards of the Administrative Procedure Act ("APA"), not FOIA. Defs.' Reply Br. at 12 n.10. But "legal standards" are not the issue—the facts are. In *Jurewicz,* the Agencies defended their release of the exact same information they now inexplicably seek to withhold from the ASPCA in this matter before the Court. *Jurewicz,* 891 F. Supp. 2d at 153-54.

[15] The ASPCA has not, as Defendants allege, ignored that the two cases must be analyzed under different standards. Defs.' Reply Br. at 13. The ASPCA clearly acknowledged the *Jurewicz* decision was decided on the predecessor Exemption 4 standard before *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019), but maintains the facts on record in *Jurewicz* demonstrate that the Block 10 information is not "confidential" under the test set out in *Food Mktg. Inst.* Pl.'s Br. at 34. Defendants baselessly assert that the ASPCA has not considered the applicable legal standard while Defendants themselves ignore the facts applicable to that standard.

same party is judicial estoppel . . . .").  Defendants cannot square the two statements offered by the same Agency official (Woods), on behalf of the same Agencies (USDA and APHIS), analyzing the same exact records (license renewal applications), relating to the same class of individuals (USDA licensees), and the same category of information (Block 10 and fee information), that make contradictory representations to the court on the same factual matter—whether these categories of information have been customarily or actually released to the public.

Defendants also insist this Court should not require them to show both conditions for determining confidentiality recognized by the Supreme Court in *Food Mktg. Inst.* have been met here.  Reply Br. at 13-14.  The ASPCA's position that both conditions should be met is based on the sources the Supreme Court relied on in issuing its decision in *Food Mktg. Inst.* and the Court's citation to existing case law imposing that requirement.  Pl.'s Br. at 35.  While Defendants dismiss the ASPCA's position as speculation, Defendants decline to provide any competing analysis of the Supreme Court's decision or the cited cases.  Reply Br. at 13-14.  Defendants' position is also transparently self-serving—their Exemption 4 argument would summarily fail if the Court were to consider both conditions.  Defendants have already conceded they cannot meet one of the two conditions set forth by the Supreme Court in *Food Mgt. Inst.*  Defendants also failed to respond to the ASPCA's argument that allowing information that is critical to the public's understanding of an agency's administration of federal law to fall under Exemption 4 would completely undermine the purpose of FOIA to "ensure an informed citizenry" and "hold the governors accountable to the governed."  Pl.'s Br. at 36.

Finally, Defendants failed to show that Exemption 4 applies to Ex. 14 (2017-APHIS-3967).  The Agencies' basis for withholding this record is entirely conclusory, specifically, that "APHIS determined" the information is confidential.    Reply Br. at 14.    The Agencies make no

representation that they consulted with the licensee, and their vague statement that the instructions are not released during the "approval" process[16] falls conspicuously short of confirming this information is not publicly available.  *Id.*

## V.    THE AGENCIES UNLAWFULLY WITHHELD CERTAIN INFORMATION UNDER EXEMPTION 5.

### A.    Defendants' submissions are insufficient.

Contrary to Defendants' assertions, the Woods Declaration and the Exemption 5 *Vaughn* Index (collectively, Defendants' "submissions") are insufficient.  *See Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 607 (S.D.N.Y. 2018) (Submissions are insufficient "where 'the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'").  Plaintiff pointed to specific examples in Defendants' submissions to show that they are vague, conclusory, and attempt to recite legal standards.  *See* Pl.'s Br. at 40-41 (identifying Woods SJ Decl. ¶¶ 187-83 and, e.g., Exemption 5 *Vaughn* at 000410-412).  Defendants provide no additional information to substantiate their withholdings.  Simply stating that their submissions are sufficient does not make them so.

### B.    Defendants fail to show reasonably foreseeable harm.

Defendants continue to ignore the "independent and meaningful burden" that FOIA places on them to show that disclosure would cause reasonably foreseeable harm.  *See NRDC v. EPA*, 2019 U.S. Dist. LEXIS 124353, at *2 (S.D.N.Y. 2019) (citations omitted).  Perfunctory or boilerplate language reflecting the policy goals of an exemption is insufficient.  *See id*.  Yet, Defendants refuse to offer anything else.  *See* Reply Br. at 16 n.12; Woods SJ Decl. ¶ 180 (cursory application of the policy behind the deliberative process privilege).  As such, Defendants fail to meet their burden to show reasonably foreseeable harm.

---

[16] The Agencies also fail to explain to what "approval process" they are referring.

### C. Defendants fail to demonstrate that the challenged documents fall within Exemption 5.

Initially, Plaintiff challenges five—not six—documents,[17] and Defendants wrongly claim that the Agencies withheld all of the challenged documents pursuant to the deliberative process privilege **and** the attorney-client privilege. Reply Br. at 15. In fact, the Agencies only claim attorney-client privilege on two of the documents. Ex. 22 (RFF update e-mail, claiming both privileges); Ex. 21 (RFF e-mail, claiming both privileges). *See also* 5 U.S.C. § 552(b) (requiring that exemptions be identified on the documents produced).[18] Thus, Plaintiff sufficiently addressed Defendants' justifications for withholding the challenged information.

Through a detailed examination of Defendants' submissions and the records produced, Plaintiff demonstrated that the Agencies should not have withheld the challenged documents. Pl.'s Br. at 42-53. Defendants fail to rebut Plaintiff's showing, offering no additional details of the documents or justifications for failing to disclose them. Specifically, Defendants fail to rebut the evidence that contradicts their claims of deliberative process privilege, and their only attempt to address any of the purportedly deliberative material mischaracterizes Plaintiff's arguments. Reply Br. at 16 n.13. Plaintiff demonstrated that the RFF update e-mail and the USDA Confiscation e-mail were neither predecisional nor deliberative.[19] Pl.'s Br. at 43-44, 48-49. Defendants rely on

---

[17] *See* Ex. 22 at 000410-412 (the July 25, 2017 "Ruby Fur Farm update" e-mail sent from the APHIS Deputy Administrator to the Administrator and Associate Administrator and forwarded by the Administrator to OSEC) [hereinafter, the "RFF update e-mail"]; Ex. 21 at 000369 (the July 26, 2017 "RFF" e-mail from the APHIS Deputy Administrator to staff) [hereinafter, the "RFF e-mail"]; Ex. 23 at 000451-452 (the July 27, 2017 "FW: Urgent: Unlawful USDA Confiscation in Iowa Underway" e-mail from the APHIS Deputy Administrator to the Associate Administrator) [hereinafter, the "USDA Confiscation e-mail"]; Ex. 21 at 000370-380 (the portion that contains the "Ruby Memo, 072517," which upon information and belief is at 000378-380) [hereinafter, the "Summary Memo"]; Ex. 25 at 001488-1492 (the portion that contains the "Ruby Confiscation, Welch" document, which upon information and belief is at 001488-1489) [hereinafter, the "Inspection Notes"].

[18] While the Exemption 5 *Vaughn* confusingly groups documents together, it matches the Agencies' justifications as they appear on the documents themselves. *See, e.g.*, Defs.' Br. Ex. 30, Exemption 5 *Vaughn* at 000369, attach. 000370-380 (withholding the Summary Memo under deliberative process only).

[19] Defendants do not even attempt to refute Plaintiff's argument that content of the RFF update e-mail was expressly adopted by APHIS when the Administrator later represented it as "the APHIS plan." Pl.'s Br. at 44.

a vague reference to "next steps" in the Exemption 5 *Vaughn* to argue that the USDA Confiscation e-mail is not *solely* related to the confiscation. Even if so, the portion(s) that are nondeliberative must be disclosed. Thus, at most, Defendants' response confirms that they failed to disclose all reasonably segregable information—in this instance, regarding the confiscation.

Defendants also mischaracterize Plaintiff's arguments regarding attorney-client privilege. While OGC is not a primary recipient of, or is absent from, the challenged e-mails, Plaintiff does not claim that this is solely determinative of whether the privilege applies. Rather, it should be considered in the context of the communications and the requirements of the privilege. *See Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012) (privilege only protects confidential communications between client and attorney, intended to be and actually kept confidential, and made for the purpose of obtaining or providing legal advice). The limited unredacted portions of the RFF update e-mail and the RFF e-mail indicate that the purpose is to "update" APHIS officials. *See* Pl.'s Br. at 45-48. The unredacted portions, combined with the timeline of events, also indicate that the "updates"—at least in part[20]—communicate the Agencies' final plans and decisions, not confidential legal advice. *See* Ex. 22 at 000410-412 (an "update" that the Administrator later represented as "the APHIS plan"); Ex. 21 at 000369 (an "update" to staff thanking them for their work). Again, Defendants' only response is to point to the Exemption 5 *Vaughn*, which at most shows that privileged information constitutes only part of the redacted material. Defs.' Br. Ex. 30, Exemption 5 *Vaughn* at 000369 (stating that the e-mail "*also* note[s] advice provide by OGC") (emphasis added); *id.* at 000410-412 (showing that the e-mail does not relate solely to potential litigation).

---

[20] Plaintiff is not challenging the withholding of the draft administrative complaint at this time. Pl.'s Br. at 50 n.25.

Moreover, Defendants' reliance on *Barnard v. Department of Homeland Security*, 531 F. Supp. 2d 131 (D.D.C. 2008) to demonstrate that Woods can properly attest to the confidentiality of the communications at issue is misplaced.  The *Barnard* court found that, "[b]ecause [the FOIA officer] is familiar with the processes used to search for the records at issue, and because he has reviewed the records himself, he is competent to testify ***as to the information contained in those records***." *Id*. at 139 (emphasis added).  Here, however, Plaintiff challenges whether Woods can attest to purportedly privileged communications being maintained in confidence, given extensive communications between APHIS leadership, OSEC, OGC and third parties concerning the same topics around the same time.  *See* Ex. 20 (communications regarding inspections and confiscation activities); Ex. 35 (communications regarding confiscation activities); Ex. 36 (communications regarding confiscation activities, showing APHIS's intent for them to "not go any farther [sic]"); Ex. 37 (summarizing communications regarding the Agencies' activities in July 2017). Defendants entirely fail to address these third-party communications.

Furthermore, even if Woods could attest to confidentiality, the statements upon which Defendants rely are insufficient.  *See* Reply Br. at 17 (citing Woods SJ Decl. ¶ 3).  Woods does not identify the APHIS officials with whom she consulted in making her Declaration— specifically, whether she consulted with APHIS leadership—nor does she state whether the "consultation" included verification that purportedly privileged information was maintained as confidential.  Woods also does not attest to having consulted with OSEC or OGC to verify confidentiality.  Although Plaintiff identified additional information that could be used to establish confidentiality—namely, declarations from officials with personal knowledge of the e-mails and the third-party communications—Defendants chose not to provide any.  Thus, Defendants fail to meet their burden of showing that confidentiality was maintained.

**D.    Defendants must disclose all reasonably segregable information.**

Defendants must provide "a detailed justification for [their] decision that non-exempt material is not segregable." *See Knight First Amendment Inst. at Columbia Univ. v. Dep't of Homeland Sec.*, 407 F. Supp. 3d 334, 343 (S.D.N.Y. 2019). The conclusory statements in Woods's Declaration are insufficient, as they do not explain the Agencies' justification for failing to disclose nonexempt material in any individual document withheld under Exemption 5.[21] Pl.'s Br. at 53; *see, e.g.*, *Knight First*, 407 F. Supp. 3d at 347-49 (finding that the agency failed to provide an adequate segregability analysis for a memorandum containing factual information).

Even if Defendants' segregability analysis was sufficient—it is not—Plaintiff rebutted the presumption that the Agencies complied with their obligation to disclose reasonably segregable information in the challenged documents. Although "[t]he quantum of evidence required to overcome that presumption is not clear[,]" Plaintiff has provided "clear evidence" and at least "evidence that would warrant a belief by a reasonable person," that the Agencies failed to comply with their obligation. *NRDC v. EPA*, 403 F. Supp. 3d 270, 286 (S.D.N.Y. 2019) (quoting *Sussman v. U.S. Marshalls Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)), *rev'd on other grounds*, 954 F.3d 150 (2d Cir. Apr. 1, 2020). First, Plaintiff demonstrated that the timeline of events indicates that the challenged documents contain post-decisional, non-deliberative material. Second, Plaintiff demonstrated that the challenged documents do not meet the requirements of attorney-client privilege, to the extent the Agencies claim the privilege applies. Thus, any nondeliberative or nonprivileged information should be disclosed. Third, as discussed below, the Summary Memo and the Inspection Notes likely contain factual material that should be disclosed.

---

[21] Defendants' assertion that "the vast majority of the documents…were released in part," Reply Br. at 18, minimizes the extent of the Agencies' redactions to those documents. For example, the Agencies withheld nearly all of the text of the three e-mail that Plaintiff challenges here, yet those e-mails were "released in part."

While factual material that is "inextricably intertwined" with otherwise exempt material may be withheld under Exemption 5, "the agency has the burden of establishing the necessity of keeping its records' factual observations undisclosed." *Hopkins v. HUD*, 929 F.2d 81, 85 (2d Cir. 1991). Here, Woods's Declaration contains only conclusory assertions regarding factual information and segregability, *see* Woods SJ Decl. ¶¶ 180, 188, and Plaintiff demonstrated that the Summary Memo and the Inspection Notes likely contain factual information. *See* Pl.'s Br. at 50-51. In response, Defendants recite general principles, making no attempt to apply them to the challenged documents.[22] Defendants also make no attempt to provide any additional details of the documents, or to explain how factual material contained therein relates to any purportedly exempt information.[23] Thus, Defendants fail to rebut Plaintiff's showing that the Summary Memo and the Inspection Notes likely contain factual information.

### E.    *In camera* review of the challenged documents is appropriate.

*In camera* review of FOIA material is appropriate where agency declarations are conclusory or where evidence in the record contradicts agency declarations. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392-93 (D.C. Cir. 1987); *see also*, *Hopkins v. HUD*, 929 F.2d 81, 85-86 (2d Cir. 1991) (*in camera* review is appropriate when the agency fails to provide specific details as to the contents of the challenged documents). In the former circumstance, "*in camera* review may be necessary to allow meaningful *de novo* review." *Carter*, 830 F.2d at 392. In the latter circumstance, "*in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal nonexempt information." *Id.* at 393.

---

[22] Defendants attempt to distract from the issue with references to draft documents. Reply Br. at 18-19. Although Plaintiff expects Defendants to fully comply with their obligation to disclose purely factual material in all of the withheld documents, it is affirmatively challenging Defendants' withholding of what Plaintiff understands to be the **final** version of the "Ruby Memo, 072517." *See* Pl.'s Br. at 50 n.25.

[23] Defendants inexplicably refuse to even admit that the documents contain factual information.

Both circumstances exist here.  First, Woods's Declaration contains conclusory statements about the withheld material, including the challenged documents.  *See, e.g.*, Woods SJ Decl. ¶ 180 (blanket description of all purportedly deliberative material as "reflect[ing] pre-decisional information on the government's policy decisions with regard to the care and handling of animals under [the AWA]"); *id.* (broadly stating that "[w]here possible, factual and non-deliberative information is being released"); *id.* ¶ 188 (broadly stating that "[w]here reasonably segregable non-exempt material was identified, it was released").  Second, evidence in the record indicates that the challenged documents likely contain nonexempt material.  As such, *in camera* review is appropriate.  Furthermore, because the challenged documents, along with the additional material included in the Exemption 5 *Vaughn* entries, constitute only 24 pages, *in camera* review will conserve resources.  *See Carter*, 830 F.2d at 393.

## CONCLUSION

For the foregoing reasons, and the reasons stated in ASPCA's Brief, the Court should deny Defendants' motion for judgment on the pleadings under Rule 12(c), deny Defendants' motion for summary judgment, grant Plaintiff's cross-motion for summary judgment, and award any other relief the Court deems just and proper.

Dated:  New York, New York
       June 19, 2020

                         Respectfully Submitted,

                         COOLEY LLP

                         */s/ Erin M. Estevez*
                         Erin M. Estevez (*admitted pro hac vice*)
                         Bonnie Weiss McLeod (*admitted pro hac vice*)
                         1299 Pennsylvania Ave.
                         Suite 700
                         Washington, D.C. 20004
                         Phone: (202) 728-7065
                         Fax: (202) 842-7899
                         eestevez@cooley.com
                         bweissmcleod@cooley.com

                         Kaitland M. Kennelly (KK-9574)
                         55 Hudson Yards
                         New York, New York 10001-2157
                         Phone: (212) 479-6643
                         Fax: (212) 479-6275
                         kkennelly@cooley.com

                         and

                         Jennifer H. Chin (JC-6317)
                         Robert G. Hensley (*admitted pro hac vice*)
                         Tamara Y. Feliciano (*admitted pro hac vice*)
                         ASPCA
                         520 8th Avenue, 7th Floor
                         New York, New York 10018
                         Phone: (212) 876-7700
                         jennifer.chin@aspca.org
                         robert.hensley@aspca.org
                         tamara.feliciano@aspca.org

                         *Attorneys for Plaintiff*

228103503